[No. 3,970.]

## THE GILSON QUARTZ MINING COMPANY *v.* L. GILSON AND E. M. HAMPTON.

FINDINGS IN CASE OF NONSUIT.—Findings of fact and conclusions of law are not required nor proper in case of nonsuit.

TENDER BEFORE BRINGING ACTION.—If the judgment creditor agrees with the judgment debtor that the judgment shall be satisfied upon the performance of certain conditions by the judgment debtor, and the judgment is satisfied, and the judgment creditor afterwards sues to cancel the satisfaction on the alleged ground that it was fraudulently obtained before all the conditions were performed, he is not obliged, before bringing the action, to return money paid him in performance of the conditions, nor to place the debtor in *statu quo*.

IDEM.—In such case, the judgment creditor is entitled to retain the money paid him, in any event.

IDEM.—The plaintiff, before bringing such action, is not obliged to return or
tender to a third person property given by such third person to the
judgment creditor, as one of the considerations for the cancellation of
the judgment.

APPEAL from the District Court, Fifth Judicial District,
Tuolumne County.

The plaintiff obtained a judgment against the defendants
in September, 1866, for $7,249.59, and that the defendants
convey to the plaintiff a certain quartz mill and mine. The
plaintiff was the owner of a quartz mill and mine near
Soulsbyville, Tuolumne County, known as the Gilson
Quartz Mining Company's property. The judgment re-
maining unpaid, the plaintiff agreed with the defendant,
in 1871, to satisfy the judgment if the defendants would
pay the plaintiff $2,000 in money, and, as the plaintiff
claimed, would find a purchaser for the plaintiff's quartz
mill and mine at $5,000. The defendant paid the plaintiff
the $2,000, and the plaintiff cancelled the judgment, and
delivered a deed of the mill and mine, made to Jesse Hol-
liday, to D. M. Kenfield, who was represented as the agent
for Holliday, the purchaser. The $5,000 was not paid for
the mill and mine, and the plaintiff brought this action to
cancel the satisfaction of the judgment, alleging that the
satisfaction was fraudulently obtained. The defendants
denied, in their answer, that the purchase of the quartz
mill and mine was a part of the consideration for the can-
cellation of the judgment, but alleged that it was an inde-
pendent transaction.

The plaintiff's testimony tended to show that there were
forty-four shares of stock in the corporation, which were all
held by R. S. Raymond and C. E. Gorham, except four
shares held by N. P. Turner and E. A. Rodgers. That de-
fendant Gilson agreed to pay the plaintiff $2,000, and pro-
cure a purchaser for its quartz mill and mine at $5,000, if
the plaintiff would satisfy the judgment. That Gilson
soon after represented that he had found a purchaser at
that price, and that it was Jesse Holliday, of San Fran-
cisco, and that D. M. Kenfield, agent of Wells, Fargo &

Co. at Sonora, where the parties were, was Holliday's agent. That Kenfield showed the plaintiff's agent a letter from Holliday, requesting Kenfield to act as his agent in the purchase, and draw on him in San Francisco for the money. That Raymond then wrote to Gorham, at San Francisco, to come up; and he soon after came; and a meeting of the trustees, consisting of Raymond, Gorham, and Hampton, was called. Kenfield claimed eleven shares of the stock, but the Company did not acknowledge his title to it. It was then arranged that Kenfield should relinquish his claim to the stock for the purpose of avoiding difficulty in that respect. The corporation then executed a deed of the mill and mine to Jesse Holliday, and Kenfield, for Gilson, paid the corporation the $2,000.

The testimony further tended to show that Kenfield then promised to give the check on Holliday for $5,000, if the the judgment was cancelled; and that the judgment was cancelled; but Kenfield refused to give the check. The testimony further tended to show that Holliday had no interest in the proposed purchase, but was merely acting as agent for Kenfield, and that Kenfield was making the purchase for Gilson.

The defendants moved for a nonsuit, on the ground that before bringing the suit, plaintiff should have paid back or tendered the two thousand dollars which had been paid by defendants, and also should have re-transferred to Kenfield the stock, to which he had relinquished all his right, title and interest.

The Court granted the motion and dismissed the action, to which ruling the plaintiff excepted.

The plaintiff appealed from the judgment, and from an order denying a new trial.

*Caleb Dorsey,* for the Appellant.

Admitting that the action was for the rescision of a contract; the decision of the Court and judgment are against law—for in the class of cases such as the one under consideration, the defendants are not entitled to be placed in

*statu quo,* by having the money refunded, or the stock re-transferred, as a condition precedent to bringing suit.

This case is precisely like that of *Pierce* v. *Wood,* 3d Foster, 519, wherein a debtor effected a compromise of his debts by fraudulent representations, and procured a discharge of the same by paying a percentage thereon. In that case, an action was brought to recover the balance, on the ground of fraud, and it was held that the doctrine of the rescision of contracts did not apply to such a case; and it was also decided that it is not necessary, as preliminary to the right of recovery, that the plaintiff should repay the percentage received.

Even if this action was for a rescision of a contract, the decision of the Court and judgment is against law.

I fully recognize the rule that, generally, wherever one party has a right to rescind a contract, and exercises that right, he must restore the other to the same condition that he would have been in if the contract had not been made. This rule has many exceptions, and the one now under consideration comes within the exceptions. In a certain class of cases for fraud, this rule does not obtain. In Parsons on Contracts, vol. 2, p. 279, the learned author, after stating the rule as I have above admitted, says: "But where the right to rescind springs from discovered fraud, there is an exception to the rule."

When a vendor received in part payment for goods the note of a third person, and for the other part an order from the vendee to another person, which order was duly paid, it was held that the vendor, having taken the note upon the false and fraudulent representations by the vendee that the maker was solvent, might return the note and sue for the amount of the goods sold above the order, without returning the order also, and that the defendant was not entitled to be placed entirely in *statu quo.* (*Martin* v. *Roberts,* 5 Cushing, p. 126.) And in another case, where A obtained goods of B by false pretenses, and gave therefor an accepted draft upon C, an accommodation acceptor, it is not necessary for B to return the draft to A in order to rescind

the sale and recover back the goods.    (*Frost* v. *Lowery*, 15 Ohio, p. 200; see *Pierce* v. *Wood*, 3 Foster, above cited.)

I know of no provision of the Practice Act that requires findings in case of a decision granting motion for a nonsuit or dismissal of the action.    Section 581 of the Code of Civil Procedure provides in what cases a nonsuit or dismissal of the action may be granted.    Section 582 then provides that "In every case, other than those mentioned in the last section, judgments must be on the merits."    Section 635 provides that "At the time the case is submitted, the Judge may direct findings."    The Practice Act does not require findings in the case of a nonsuit; and the findings in this case must be disregarded by this Court.

*E. R. Galvin* and *W. L. Dudley*, for Respondents.

The plaintiff wanted to retain both the money and stock received under a contract which it disaffirmed, and was asking the Court to declare null and void.    This the plaintiff could not do until it had first placed the defendants in *statu quo*.    It could not rescind in part, but must rescind in whole according to a well settled principle of law.    (2d Story's Equity Jurisprudence, Sec. 707; *Bohall* v. *Diller*, 41 Cal. 532. *Baker* v. *Robbins*, 2 Denio, 136; *Ely* v. *Mumford*, 47 Barb. 6–9.    So in *Miller* v. *Steen*, 30 Cal. 402, the Court said: "If the vendor rescinds, he must put the vendee in *statu quo*, by returning the portion of the purchase money paid."

By the COURT:

1.    The plaintiff having been nonsuited at the trial on July 11th, the "findings of fact and conclusions of law," filed on the twenty-sixth of July, are without precedent in point of practice.

2.    The Court manifestly erred in nonsuiting the plaintiff, who was not bound to return to the defendants the moneys received of them in part satisfaction of the judgment, for the plaintiff is entitled to retain these moneys in any aspect of the case.

Nor does it concern the defendants what disposition has been made of the Kenfield stock. If it had been returned to Kenfield, it would not have benefited the defendants in anywise.

Judgment reversed, and cause remanded for a new trial. Remittitur forthwith.