7266

## SMITH v. NELSON.

Suit on Lost Check—Equity.—The complaint in this action, held to set out a good cause of action in equity by the payee of a check, for value, who assigned it to another and mailed it to him, but it was lost in the mail, the maker having withdrawn the funds in the bank on which the check was drawn, and the payee being still liable to the party to whom it was assigned and mailed.

Before Hydrick, J., Charleston, February term, 1908. Reversed.

Action by J. D. Smith against Walter L. Nelson, carrying on business as Nelson & Munzenmaier. From order striking out complaint, plaintiff appeals.

*Messrs. Mitchell & Smith,* for appellant, cite: *Suit may be maintained on lost negotiable instrument:* 2 Speer, 193; 2 N. & McC., 464; 2 Bail., 427; 2 Strob., 160; 2 Hill Eq., 371; Dud. Eq., 85; 25 Cyc., 1608; 15 Fed. Cas., 130; 6 Rich., 171; 101 Mass., 370; 4 Cyc., 92, 95, 96; 2 McC., 374; 2 Bail., 16; 1 McC., 219; 90 Ill. App., 448; 4 Ency., 279; 7 Cyc., 796; 24 Ency., 277. *Check is not payment:* 17 S. C., 499; 22 Ency., 569; 15 S. C., 80; 9 Rich., 31. *Plaintiff entitled to some relief:* 70 S. C., 580; 80 S. C., 224. *Order of Judge Gage is now appealable:* Code of Proc., 341, 11, 266; 3 S. C., 606; 36 S. C., 562, 174; 81 S. C., 87; 11 S. C., 134; 66 S. C., 16. *Indemnity need not be tendered in the complaint:* 13 Ency. P. & P., 366; 153 Mass., 550; 104 Fed. R., 190; 58 N. E., 1013. *Payment is a defense and need not be alleged by plaintiff:* 50 S. C., 181; 15 S. C., 80; 17 S. C., 499; 10 S. C., 436.

*Messrs. Nath. B. Barnwell* and *Jno. C. Millar,* contra, cite: *Plaintiff can not now appeal from Judge Gage's order:* 15 S. C., 538; 51 S. C., 313, 317; 56 S. C., 48; 69 S. C., 462. *Check is payable to the payee or his order or bearer:*

5 Ency., 1029; Dan. Neg. Inst., sec. 1566; 74 S. C., 210. *Rights of holder of a check:* 37 Am. R., 92; 8 S. C., 290; 107 Fed., 196; 32 Am. Dec., 231; 78 S. C., 274; 11 Rich., 657; 23 S. C., 250; 3 Hill, 228; 78 S. C., 531; 3 McC., 365; 32 S. C., 538; 14 L. R. A. (N. S.), 616; 79 Pac., 133; 8 Cyc., 60. *Suit can only be maintained by the owner:* 10 Rich., 110; 6 Rich., 182; 8 Cyc., 85, 86, 24; 3 Randolph Com. Paper, secs. 1692, 1696, 1697; 2 Brev., 377. *Form of action to be in equity:* 24 S. C., 44. *Did amended complaint comply with Judge Gage's order?* 6 Rich., 182; 45 S. C., 606. *Motion to strike out amended complaint was defendant's remedy:* 29 S. C., 328; 25 N. W., 934; 80 Pac., 1041; 106 N. W., 170; 16 S. C., 364.

July 27, 1909. The opinion of the Court was delivered by

JUDGE ROBERT ALDRICH, *acting Associate Justice in place of* MR. JUSTICE HYDRICK, *disqualified.*

In this case the plaintiff served a complaint on the 20th day of April, 1907, to which the defendant interposed a demurrer.

The demurrer was heard before the Honorable G. W. Gage, presiding Judge, at the November term, 1907, and upon the hearing he made an order, dated 30th of November, 1907, sustaining the demurrer, on the ground that the complaint was in an action at law, but that the plaintiff's remedy was in equity; that he was entitled to sue in equity and have a decree which might protect the defendant and award the plaintiff his demand. While the demurrer was sustained, the order permitted the plaintiff to amend the complaint as he might be advised within twenty days after the filing of the order. The plaintiff complied with this order without serving any notice of intention to appeal at that time, and served the following amended complaint:.

1. "That heretofore, to wit, on or about the 8th day of January, 1906, this plaintiff sold and delivered to the said above-named defendant a number of cattle, the property of

the plaintiff, numbering about twenty-six head, for the sum of two hundred and fifty-nine 32-100 dollars, which said sum of money the defendant agreed and promised to pay to the plaintiff for the said cattle.

2. "That the defendant gave to the plaintiff, in conditional payment of the same, a check upon the Columbian Banking and Trust Company for the said sum of two hundred and fifty-nine 32-100 dollars, payable to the order of the plaintiff, which check the plaintiff endorsed over, payable specially to the order of a party in Georgia whom plaintiff owed on his part for the purchase of said cattle, and deposited an envelope containing said check in the postoffice addressed to the said party in Georgia, but that the said check was, as plaintiff is informed and believes, lost in the mails and never delivered to the said party in Georgia and was never at any time received by him.

3. "That the defendant was duly notified of the same and asked to give a check in place of the one so lost, or to pay for the said cattle, and full and ample security was offered to him to secure him against any possibility of loss from the said check being thereafter found and presented for payment, but the defendant has constantly refused to give any second check or to pay the same, and that the whole amount of said sum of two hundred and fifty-nine 32-100 dollars is still due and owing.

4. "That subsequently to the giving of the said check the said defendant, as plaintiff is informed and believes, drew out and used and converted to his own purposes all his money then on deposit in the said Columbian Banking and Trust Company, so that there was nothing for the said check to be effectual upon even if same had been discovered and presented.

5. "That the plaintiff is still willing to and continues ready to enter into such bond or security as the Court may order to indemnify the defendant and secure him against any possibility of loss from the said check being found and

presented for payment, and to do such other acts as may seem to the Court necessary to completely guard and indemnify the defendant against any possible loss by reason of the said check.

6. "That defendant has refused and still refuses to accept any indemnity for security against said check and has refused and still refuses to give plaintiff another check in lieu of the one so lost or to pay the amount due to plaintiff for the sale and delivery of said cattle as aforesaid."

Thereupon the defendant gave notice that he would move for an order to strike out the complaint as amended under the order of Judge Gage on the following grounds, viz.:

1. "Because said complaint served as an amended complaint has not been amended so as to conform with the order of Judge Gage, dated November 30, 1907, sustaining defendant's demurrer and permitting plaintiff to serve an amended complaint.

2. "Because said amended complaint does not state a cause of action in equity on behalf of plaintiff as required by the order of Judge Gage permitting an amended complaint to be served.

3. "Because said amended complaint is substantially a restatement of the complaint which was dismissed on demurrer herein by Judge Gage by order dated November 30, 1907."

The motion came on to be heard before the Honorable D. E. Hydrick, presiding Judge, at the February term, 1908, who, after hearing the motion, granted the same, and ordered the complaint served herein as an amended complaint to be stricken from the files and the suit dismissed.

From this order of Judge Hydrick this appeal has been taken, upon the following exceptions:

1. "Because his Honor erred in holding and deciding that 'the action is at law and that the plaintiff has a remedy; he may sue in equity and have a decree which may protect the defendant and award the plaintiff his demand.'

Whereas, it is respectfully submitted, that there is no difference in form between legal and equitable actions under the Code, and his Honor should have held that the complaint in this action states facts sufficient to constitute a cause of action in equity and entitling the plaintiff to equitable relief.

2. "Because his Honor erred in sustaining the demurrer to the complaint upon grounds which were not made or argued by the defendant and not taken or mentioned in the demurrer or the grounds and specifications of demurrer.

3. "Because his Honor erred in sustaining the demurrer to the complaint upon the ground assigned that 'the check is outstanding,· is negotiable, may fall into *bona fide* hands and be demanded of the defendant.' Whereas, his Honor should have held that the complaint on its face states a good and sufficient cause of action and shows on its face that the plaintiff is entitled to recover upon giving to the defendant suitable indemnity to secure him against the possibility of the check being found by any one and presented for payment.

4. "The plaintiff excepts to the decree of his Honor, Judge Hydrick, dated May 16, 1908, striking out the amended complaint and dismissing the suit, it being alleged that said decree is erroneous upon the following grounds: 'Because his Honor, Judge Hydrick, erred in striking out the amended complaint and dismissing the suit, in that such decree overruled and was inconsistent with the order of Judge Gage, which declared that the plaintiff had a remedy and might sue in equity, whereas, his Honor, Judge Hydrick, ignoring the said order, held that the plaintiff had no remedy and dismissed the suit, and that his Honor should have construed the order of Judge Gage and permitted the plaintiff to amend.

5. "Because his Honor, Judge Hydrick, in striking out said amended complaint and dismissing the suit was in error in that the amended complaint complies in all respects with

the order of Judge Gage, permitting it to be amended and supplies every supposed defect as indicated in said order.

6. "Because his Honor, Judge Hydrick, erred in striking out the amended complaint and dismissing the suit, whereas, the amended complaint states facts sufficient to constitute a cause of action as permitted and indicated by the order of Judge Gage, and his Honor should have so held.

7. "That his Honor, Judge Hydrick, erred in summarily dismissing the suit and should have held that the complaint as amended discloses on its face a good and sufficient cause of action, and shows on its face that the plaintiff is entitled to recover upon giving to the defendant suitable indemnity to secure him against the possibility of the check being found by any one and presented for payment."

The first three exceptions relate to the order made by his Honor, Judge Gage. The point is made by the respondent that these exceptions can not be considered by the Court, inasmuch as the plaintiff having made no objection to the order of Judge Gage within ten days after it was filed; and having attempted to comply therewith and accepted the benefits of such order has waived the right of appeal.

The main question, however, comes up upon the appeal from the order of his Honor, Judge Hydrick, for if his Honor, Judge Hydrick, erred in striking out the amended complaint and dismissing the suit, and the amended complaint does state a sufficient cause of action, then it will be unnecessary to consider the exceptions to the prior order of Judge Gage.

The question then for decision is, does the complaint as amended state a good cause of action, entitling the plaintiff to equitable relief? The complaint alleges that the plaintiff had sold to the defendant a number of cattle for $259.32. That the defendant gave the plaintiff in conditional payment of the same a check upon the Columbian Banking and Trust Company, payable to the order of plaintiff, which check the plaintiff endorsed over payable specially to the order of a

party in Georgia, whom plaintiff owed on his part for the same cattle; that plaintiff deposited the check in the post-office properly addressed to the party in Georgia, but the said check, as plaintiff is informed and believes, was lost in the mails and was never delivered to the said party in Georgia, and has never at any time been received by him.

The allegation of the complaint, therefore, is, that the check which was given in payment for the cattle had been lost and never used, and the complaint upon the whole must be construed to be a suit upon a lost check.

The authorities in this State are conclusive to the effect that a suit will lie upon a lost note, and that in such case, when the suit is upon a lost note, the proper course is for the loser to go into equity, when by a decree of the Court sufficient indemnity can be required to relieve the defendant from the danger of being made liable a second time. *White-sides* v. *Wallace,* 2 Spear., 193; *Davis & Tarleton* v. *Benbow,* 2 Bail., 427; *Chewning* v. *Singleton,* 2 Hill Eq., 371; *Wardlaw* v. *Heirs of Gray,* Dud. Eq., 85.

The principles of these cases will apply equally to other lost negotiable instruments, including checks.

It follows from the decisions in this State that there is no doubt that an action in equity will lie to recover upon a lost note or check, and that in such case in decreeing a recovery the Court will protect the defendant by a suitable provision for indemnity.

The respondent raises the ground that these authorities do not apply, inasmuch as it appears upon the face of the complaint that the check which is the subject of the action was assigned and transferred to a party in Georgia, and that the plaintiff is not the real party in interest and had no title to the check.

If the check were in existence, and in the hands of a third party, duly endorsed over to him, such third party, as the final holder, would have à right of action against both the plaintiff as endorser and the defendant as the maker of

the check. The plaintiff, however, as payee would also have a right of action against the defendant as maker. They would both be liable to the holder of the check, but the defendant, as the original maker, would continue liable to the plaintiff as original payee or as endorser until the debt represented by the check was settled. The rule is precisely the same as exists between the maker and the successive endorsers, according to succession on an inland bill of exchange or a promissory note. Daniel on Neg. Instr., 4 ed., 2 vol., secs. 1651, 1652. Each endorser being liable to all subsequent endorsers as the maker is liable to all endorsers. Any endorser who is called upon by the holder to pay can enforce the liability against the maker. The liability of the maker being forced for the benefit of the actual holder at the time of the trial.

So, also, if the check, which was delivered to the plaintiff, had been by him actually endorsed over and delivered to a third party, and was in the possession of such third party, it would operate as an equitable assignment *pro tanto* of the funds of the drawer in the bank so as to permit the holder to sue the bank for the recovery of such funds as were in the bank whenever it received notice of the check, to the extent of the check. *Bank* v. *Bank*, 74 S. C., 210, 54 S. E., 364.

The case presented is in a different class. The complaint alleges that the check is *lost,* that it never has been received by and is not in the possession of the party in Georgia to whom it was addressed. This is a part of the plaintiff's allegations, and at the time of the trial it may be encumbent on him to sustain it by the proper proof. Assuming, however, that it be true as alleged in the complaint, that the check has been lost and has never been received, and is not now held by the party in Georgia, does the mere fact of having mailed it to such party divest the original holder of his interest so as that he is not able to sue the drawer upon it? We hold that if the check was lost and never delivered to

the party to whom it was addressed, and the plaintiff still remained responsible for its amount to the party in Georgia, whom he intended to pay thereby, that the original holder has title in himself and can sue upon the check as a lost check.

The case of *Savannah National Bank* v. *Haskins et al.,* 101 Mass., 370, is exactly to the point, and the reasoning of the case commends itself to us. The case of *Mitchell* v. *Byrne,* 6 Rich., 171, is not applicable to the present case. In that case the bills of exchange paid by Moon in Liverpool were paid simply for the honor of the plaintiff, Mitchell & Co., and Moon himself stated that he had accepted and paid the bills of exchange of plaintiff only for the honor of the plaintiffs, and looked to them solely for repayment. He did not look at all to Booth, who was the original party upon whom the bills had been drawn by Mitchell & Co. We can not hold that although the holder of a bill paid for the honor of the drawer holds it as endorser with all the rights against the parties to the bill which endorsing can confer, yet there is nothing to prevent the holder surrendering the bill to the party for whose honor the bill was paid and relinquishing to him all the holder's rights in the instrument, and that such being Moon's intention, Mitchell & Co. remained creditors of Booth as holders of the bills. In the present case the plaintiff substantially occupies the same position that was occupied by Mitchell & Co. in the case of *Mitchell* v. *Byrne.* The original debt was due to the plaintiff in this cause as it was due to Mitchell & Co. in *Mitchell* v. *Byrne.* In neither case had that debt been actually paid. In the present case the check given for its payment has been lost and the defendant has himself withdrawn from the bank on which the check was drawn the funds on which the check was to operate. In the *Mitchell* v. *Byrne* case, the bills of exchange drawn on Booth had been accepted by Booth, and his acceptance dishonored at maturity, and they

were then taken up by Moon to protect the commercial honor of Mitchell & Co.

The Court practically held that because Moon had taken up the bills to protect Mitchell & Co.'s honor that did not release Booth, who had dishonored his acceptance and who still remained liable to Mitchell & Co. on the original debt, Mitchell & Co., being responsible over to Moon. So, in the present case the plaintiff is still liable over to the party in Georgia for the cattle. The loss of the check can not operate to give the cattle to the defendant for nothing, and the defendant still remains liable to the original payee, the plaintiff.

As the plaintiff in the present case occupies the position of Mitchell & Co. in *Mitchell* v. *Byrne,* so the defendant, Nelson, occupies the relative positions of Booth. Both Nelson and Booth are the parties primarily liable on the instruments; Nelson on his check and Booth on his acceptance, and the reason of the rule is that the party primarily liable to the original creditor should remain so until there is payment or satisfaction in some way to the original creditor.

The defendant can suffer no loss by meeting his obligations, as the complaint alleges the willingness of the plaintiff to give (as it is the duty of the Court to require) such indemnity as to the Court shall seem proper, to properly secure and indemnify the defendant from any loss or damage by reason of being again asked to make good the lost check.

We also fail to see how the defendant can be entitled to rely upon the claim that the mailing of the check to the party in Georgia operated to assign to such party the funds in the bank to the extent of the check, in the face of the fact as alleged in the complaint, and which must be taken as admitted on this hearing, that the defendant, after the issue of the check, drew out of the bank all the money that the check was supposed to be drawn upon and assigned and con-

verted the same to his own use.    He, therefore, has now in his own possession the very money which he claims to have been assigned in the bank by reason of the check, and there is nothing in the bank which the check can operate on as an assignment.

We hold that the complaint does set out a good cause of action in equity in favor of the plaintiff against the defendant, and it is accordingly adjudged that the judgment below be reversed, and that the cause be remanded to the Court of Common Pleas for Charleston county for further proceedings in accordance with this judgment.